**J.D. CASTELLANO, as General Partner of Castel Properties, Ltd., an Illinois Limited Partnership, Plaintiff/Third–Party Plaintiff/Appellant,**

v.

**MARION PARTNERS, a Pennsylvania Limited Partnership, by Howard MORRIS, Gregory Russell, Daniel Litwin, Marc Zaid and Thomas Ledbetter, Defendant/Third–Party Plaintiff/Appellee,**

v.

**WAL–MART STORES, INC., a Delaware corporation, Third–Party Defendant/Appellee.**

No. 91–1128.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 1991.

Decided April 1, 1992.

Mark A. Brittingham (argued), Biggs & Hensley, St. Louis, Mo., for plaintiff/third-party plaintiff/appellant.

Mark M. Silvermintz, Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, East St. Louis, Ill., for defendant/third-party plaintiff/appellee.

Roger Price (argued), Jeffrey H. Bergman, D'Ancona & Pflaum, Chicago, Ill., for defendant/third-party plaintiff/appellee.

W.A. Armstrong (argued), Mitchell & Armstrong, Marion, Ill., for third-party defendant/appellee.

Before WOOD, Jr. and MANION, Circuit Judges, and ROSZKOWSKI, Senior District Judge.[*]

ROSZKOWSKI, Senior District Judge.

This case concerns an alleged default on a wrap around mortgage. Plaintiff–Appellant Castellano is a wrap mortgagee of property in southern Illinois upon which lies a retail building leased by Wal–Mart. Without prior notice to or permission from either Castellano or Marion Partners (the wrap mortgagor), Wal–Mart built an expansion onto the store. This expansion reached across the property line onto property owned by Wal–Mart.

Castellano asserts that the expansion is a default under the wrap around mortgage because it is a material alteration which substantially reduces the value of his security in the property. Under the wrap mortgage, if such a default occurs, the mortgagee is entitled to penalty interest.

Castellano asserts that he is entitled to penalty interest from Marion Partners. Following a bench trial, the district court found that the expansion did not constitute a default. We agree.

The various transactions involved in the ownership, mortgaging, and leasing of the property here are rather convoluted and, so, will be described in brief summary here. On October 6, 1977, J.D. Castellano, who is general partner of Castel Properties, a limited partnership, entered into a lease agreement with Wal–Mart Stores, Inc., whereby Castellano would construct a retail store on the property, and lease the store to Wal–Mart. The lease agreement requires Wal–Mart to restore the premises, at the end of the tenancy, to the same condition as when received. The lease also allows Wal–Mart to make alterations, improvements, or additions to the premises provided that they are in compliance with local ordinances, and "provided that the value of the property is not diminished thereby."

On November 12, 1978, Castellano mortgaged the retail store to Republic Realty Mortgage Corporation, which was the agent for Country Life Insurance Company, the mortgage lender. On April 21, 1981, Castellano sold the retail store to the trustees of the Lancaster Trust. As part of the sale, Castellano took a wrap around mortgage from the trustees. Both the wrap around mortgage and the Country Life Insurance mortgage provide that "the failure of [the] Mortgagor, its successors or assigns to: ... refrain from making material alterations in [the] premises except as required by law or municipal ordinance ..." will constitute a default. On December 30, 1982, Marion Partners purchased the retail store from the beneficiary of the Lancaster Trust. Marion Partners thereby assumed the position of mortgagor under the wrap around mortgage.

The activity underlying the dispute occurred in fall 1984. At that time, Wal–Mart removed the east exterior wall of the

* The Honorable Stanley J. Roszkowski, Senior District Judge for the Northern District of Illinois, is sitting by designation.

retail store and built an expansion which reached across the property line onto property owned by Wal–Mart. On March 21, 1985, Castellano, as wrap mortgagee, sent to Marion Partners, the wrap mortgagor, a notice of default under the wrap mortgage. Castellano therein asserted that Wal–Mart's removal of the east exterior wall was a material alteration of the premises, and was therefore a default under the wrap mortgage.

On March 26, 1985, which was five days later, Castellano assigned the wrap around mortgage, the wrap note which it secured, and rents to Saline Valley First Federal Savings and Loan as collateral for a $200,000 loan. As part of the process of obtaining this loan, Castellano signed a "Loan Agreement and Rents Assignment of Mortgage as Security," which stated at paragraph six: "[t]he Assignor [Castellano] represents that *there are no claimed or alleged defaults* in the note mortgage and assignments being transferred as security hereunder to his knowledge and that note and mortgage has been paid to date hereof in accordance with its term." (emphasis added).

The first issue is the proper standard of review for this court. Rule 52(a) of the Federal Rules of Civil Procedure states, in part, "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless *clearly erroneous*, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a) (emphasis added). The trial court's findings of fact involve the determinations that 1) certain witnesses were not credible; 2) the removal of one wall from and subsequent expansion of the retail store did not diminish the value of Castellano's security interest in the retail store; and 3) this removal and expansion did not constitute a material alteration of the premises.[1] Castellano argues that these findings were actually mixed findings of law and fact which this court is to review *de novo*.

■ The trial court's findings on the three critical issues in this case, identified above, were findings of *fact*. All of these findings required the court to consider and weigh the evidence before it, rather than to draw conclusions as to the relevant law. In any event, even if the trial court's findings were *mixed* findings of law and fact, the clearly erroneous standard would nonetheless apply to this court's review. *Standard Office Bldg. Corp. v. United States*, 819 F.2d 1371, 1374 (7th Cir.1987). Further, Marion Partners correctly notes that the clearly erroneous standard applies to factual findings based on *either* oral or documentary evidence, under the 1985 amendment to Rule 52(a) of the Federal Rules of Civil Procedure.

■ The trial court's Order, entered December 17, 1990, 1990 WL 357916, reveals a number of factors which led to its factual findings on the three principal issues. First, the trial court found that Appellant Castellano himself and one of his expert witnesses were not credible. The trial court mentioned the following evidence as support for this finding: 1) Castellano signed a statement that there were no actual or alleged defaults on the premises when pledging the premises as security for a $200,000 loan in March 1985; 2) Castellano testified that this statement was true when he made it; 3) Castellano mailed a Notice of Default to Marion Partners five days earlier; 4) Castellano testified that when he observed that the expansion had occurred in December 1984, he did not believe that it constituted a default; and 5) Castellano testified that if he recovered penalty interest, he would not pay any portion of it to the first mortgagee, even though it would be entitled to a portion. Given that these actions and words of Castellano are inconsistent, the trial court's findings that he was not credible is not clearly erroneous. The trial court also found that Castellano's witness, Morris Doerner, a self-employed real estate appraiser, was not credible. As

---

1. As will be explained further, the district court found that in this case, the definition of material alteration of the leased premises is an alteration which substantially reduces the value of Castellano's security interest in the leased premises. In other words, the district court's findings as to the second and third issues are identical.

support for this finding, the court noted that Doerner initially testified that an appraisal of the retail store was impossible after the expansion, but testified on cross-examination that he *could* have performed all steps necessary for an appraisal but was never asked to do so. Because Doerner's trial testimony as to whether an appraisal of the store could have been made was inconsistent, the court's finding that Doerner was not credible was not clearly erroneous.

■ The lease has priority over the wrap around mortgage, because the lease was signed on October 6, 1977, and the wrap around mortgage was created on April 21, 1981. Therefore, the default provisions of the wrap around mortgage must be considered in light of the pre-existing lease. In other words, the wrap around mortgage cannot prohibit those activities specifically allowed by the lease. So long as any alterations to the retail store do not reduce the value of the premises (the language in the lease), then, they are permissible and cannot be considered material alterations (the language in the wrap around mortgage). The trial court considered this interpretation of the lease and mortgage, together with witness Doerner's testimony of the meaning of the term "material alteration" in the real estate industry, to arrive at a definition of material alteration as "an alteration that substantially reduces the value of the security." Order, entered Dec. 14, 1990, at 23, 1990 WL 357916.

The trial court found that no material alteration of the retail store had occurred, and that therefore no default had occurred, leading to the conclusion that Castellano was not entitled to penalty interest under the wrap around mortgage. In making these findings, the trial court considered evidence that several witnesses testified that the value of the retail store had not decreased, but rather, had increased because of yearly increases in sales and annual percentage rents since the removal of the wall and subsequent expansion oc-

curred. The trial court also considered the evidence that Country Life, the first mortgagor, had executed a Certificate of Mortgage Beneficiary stating that it knew of no uncured defaults under the first mortgage.[2]

The trial court found, and this court agrees, that Castellano offered *no* credible evidence to support his contention that the removal of the wall and subsequent expansion of the retail store reduced the value of his security in the premises. Although Castellano testified that he had difficulty in pledging the premises as collateral, he did not describe the terms of such loan negotiations. Castellano offered no appraisal of the premises made after the expansion. Given the absence of credible evidence showing that the value of Castellano's security in the mortgaged premises was *reduced*, and given the presence of credible evidence showing that this value was *increased*, the trial court's finding that no default had occurred was not clearly erroneous.

During oral argument, Castellano's counsel emphasized that apart from the resultant reduction in value, Wal–Mart's expansion of the store was implicitly forbidden by the lease, because the provision entitled "Lessee's expansions" was deleted from the lease. The lease was prepared from a form lease supplied by Wal–Mart. That form included a paragraph numbered 33, entitled "Lessee's expansions." Castellano and Wal–Mart agreed to delete paragraph 33. Paragraph 23 of the form lease, entitled "Additions, alterations, or remodeling," was *not* deleted.

The parties' agreement to delete paragraph 33 from the form lease does *not* imply either that the parties intended to forbid the lessee from making expansions, or that the parties intended to differentiate between "additions, alterations, or remodeling," allowable under paragraph 23 of the lease, and "expansions" in the deleted paragraph 33.[3] The language which comprised

---

**2.** The default provisions of the first mortgage and the wrap around mortgage are identical.

**3.** Indeed, it is hard to imagine how an expansion would *not* fall within at least one of the categories of additions, alterations, and remodeling.

paragraph 33 did not say that Lessee was permitted to make expansions to the leased premises; rather, it said that Lessee could require Lessor to expand the floor area of the leased premises. Therefore, even if the court were to follow Castellano's logic that deleted portions of the lease are indicative of what the parties did *not* intend, then the parties' deletion of paragraph indicates only that they did *not* intend to allow Wal–Mart to *compel* Castellano to expand the floor space of the retail store.

Further, the deletion cannot be construed as the parties' choice to differentiate between expansions and alterations, additions, and remodeling; Wal–Mart alone, rather than both parties, provided the form lease which contained these separate captions. One provision *not* deleted from the form lease, paragraph 32(F), states that the captions in the lease do not define, limit, construe, or describe the scope or intent of each section. Indeed, the deleted paragraph 33 of the form lease itself belies Castellano's argument; it uses interchangeably the terms "expansion" and "addition," and it also requires Lessor to make all "alterations ... as may be necessary ... to incorporate the addition."

In summary, this court agrees with the district court that Plaintiff–Appellant Castellano has not shown by a preponderance of the evidence that Wal–Mart's removal of the east exterior wall from, and subsequent expansion to the retail store reduced the value of his security in the retail store leased to Wal–Mart. The expansion was not a material alteration of the premises, which would constitute a default under the wrap around mortgage. Therefore, Castellano is not entitled to penalty interest. The judgment of the district court is AFFIRMED.